**True KIRK, The True Kirk Family Trust, and Marjorie Kirk Family Trust, Plaintiffs–Appellants,**

v.

**Stephen KITCHENS and Christine Kitchens, Defendants–Appellees.**

No. 01CA0387.

Colorado Court of Appeals, Div. IV.

April 11, 2002.

Rehearing Denied May 30, 2002.

McDaniel, Baty, Miller & Robbins, LLC, Michael W. Baty, Durango, Colorado, for Plaintiffs–Appellants.

David J. Turner, Durango, Colorado, for Defendants–Appellees.

Opinion by Judge MARQUEZ.

In this action seeking declaratory and injunctive relief, plaintiffs, True Kirk and the True Kirk and Marjorie Kirk Family Trusts, appeal from trial court orders denying their motions for preliminary injunction and to reinstate a temporary restraining order. Plaintiffs contend that the trial court erred in allowing defendants, Stephen Kitchens and Christine Kitchens, to include as "amounts due" in their public trustee foreclosure bid certain interest defendants would have received if the promissory note had been paid off according to its terms. Plaintiffs also contend that the court erred in finding that such amounts were not usurious. We reverse and remand for further proceedings.

Defendants sold to third parties (borrowers) their business, equipment, and real estate comprising an automotive repair garage. Borrowers executed a promissory note and a second deed of trust in the amount of $152,786.89, with interest at 9.5% per annum.

The promissory note, in pertinent part, provided for late charges and also restricted prepayments:

> Borrower shall pay to the Note Holder a late charge of one percent (1.0%) of any payment not received by Note Holder within ten (10) days of the due date thereof, said late charges to be assessed for each day such payment remains unpaid in full beyond ten days.... *Note Holder shall not be obligated to accept any prepayment of the indebtedness evidenced by this Note in whole or in part at any time*

*prior to October 15, 2004.* With the exception of said prepayment restrictions, Borrower reserves the right to prepay this Note, in whole or in part, at any time and from time to time, without penalty or fee. (emphasis in original)

The note further provided for acceleration, recovery of expenses of collection, and other remedies in the event of default:

[T]he Note Holder may declare the unpaid principal amount of this Note and any and all interest accrued thereon to be immediately due and payable without notice, at the option of said Note Holder and the Borrower shall pay all costs and expenses of collection of this Note, including without limitation all reasonable trial and appellate attorneys' fees, costs and expenses, paid or incurred by the Note Holder, whether paid or incurred in connection with collection by suit or otherwise. . . .

The indebtedness evidenced by this Note is secured by a Security Agreement and Deed of Trust . . . and until released or satisfied said Security Agreement and Deed of Trust contain additional rights of the Note Holder. Such rights may cause Acceleration of the indebtedness evidenced by the Note.

The deed of trust similarly provided for late fees, limitations regarding prepayment, and acceleration:

Borrower is to pay to Lender a late charge of 1.0% of any payment not received by Note Holder within ten (10) days of the due date thereof, said late charge to be assessed for each day such payment remains unpaid in full beyond said ten days . . . and Borrower has the right to prepay the principal amount outstanding under said Note in whole or in part at any time without penalty except Note Holder shall not be obligated to accept any prepayment of the indebtedness evidenced by the Note secured by this Deed of Trust in whole or in part at any time prior to October 15, 2004.

Acceleration; Foreclosure; Other Remedies

. . .

[U]pon Borrower's breach of any covenant or agreement of Borrower . . . at Lender's option, all of the sums secured by this Deed of Trust shall be immediately due and payable (Acceleration).

Borrowers stopped making payments on the note in April 2000. In July 2000, defendants initiated a public trustee foreclosure on the real estate. On September 13, 2000, the property was sold by the public trustee to defendants for $161,128.80. Defendants' bid stated, "The following is an itemization of all amounts due the owner of the evidence of debt secured by the instrument being foreclosed." Included in the bid were principal, accrued interest, late charges, expenses, attorney fees, payments on the first deed of trust, and the amount of $28,899.11, which was described as a "prepayment penalty" and apparently represented the sum of all interest payments defendants would have received from September 13, 2000, to October 15, 2004, if the promissory note had been paid off according to its terms.

During the redemption period following the foreclosure, the borrowers executed a quitclaim deed conveying their interest in the property to plaintiffs. Five days before the redemption period expired, plaintiffs brought this action for declaratory and injunctive relief to challenge the amount required for redemption, which amount was based on defendants' bid. Plaintiffs claimed that the redemption price was increased to an amount that precluded them from making a profit.

Plaintiffs were granted a temporary restraining order extending the redemption period and restraining the public trustee from issuing a public trustee's deed. However, their motion for preliminary injunction and their motion to reinstate the temporary restraining order were denied. In so ruling, the trial court held that defendants should not be prevented from realizing the benefit of their contract. It is from these orders that plaintiffs appeal.

## I. Standard of Review

As a preliminary matter, we note that the parties' briefs address only the merits of the underlying dispute and do not discuss the prerequisites for preliminary injunctive re-

lief. However, because the trial court denied plaintiffs' request for preliminary injunction after concluding they had not demonstrated a reasonable likelihood of success on the merits, we assume that the parties' arguments on appeal focus on the propriety of this determination. Nevertheless, we address only the issues raised here.

Before granting a preliminary injunction, a trial court must find, among other factors, that the moving party has demonstrated a reasonable probability of success on the merits. C.R.C.P. 65(a); *Rathke v. MacFarlane*, 648 P.2d 648 (Colo.1982).

The grant or denial of a preliminary injunction is a decision that lies within the sound discretion of the trial court. However, where the issue on appeal concerns only legal questions, the trial court's judgment is subject to de novo review. *Evans v. Romer*, 854 P.2d 1270, 1274 (Colo.1993).

## II. Future Interest Payments

Plaintiffs contend that the trial court erred in allowing defendants to include in their foreclosure bid as "amounts due" future interest amounts, which they characterize as prepayment penalties not authorized by the promissory note and deed of trust. In plaintiffs' view, upon defendants' acceleration of the entire loan obligation, defendants had waived or were no longer entitled to recover the contested amounts, which would constitute an impermissible prepayment penalty. We agree.

### A.

A bid submitted to the public trustee shall set forth, inter alia, an itemization of "all amounts due under the evidence of debt and deed of trust ... and all costs and expenses allowable by the evidence of debt, deed of trust, mortgage, or other lien being foreclosed." Section 38–38–106(2), C.R.S.2001.

■ To resolve the issue presented here, we must interpret the note and deed of trust. The primary goal of contract interpretation is to determine and give effect to the intention of the parties. The intent of the parties to a contract is to be determined primarily from the language of the instru-

ment itself. Written contracts that are complete and free from ambiguity will be found to express the intention of the parties and will be enforced according to the plain language. *USI Properties East, Inc. v. Simpson*, 938 P.2d 168 (Colo.1997).

■ Questions of contract interpretation are questions of law for the court. *Radiology Prof'l Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 577 P.2d 748 (1978); *Holland v. Board of County Comm'rs*, 883 P.2d 500 (Colo.App.1994).

■ If questions raised on appeal can be determined by construction of written documents complete in their terms, this court is not bound by the findings of the trial court. We are bound, however, by the unambiguous language of the documents as written, because they express the intentions of the parties to the contract. *Klingensmith v. Serafini*, 663 P.2d 1058 (Colo.App.1983).

### B.

■ We disagree with plaintiffs' contention that defendants did not properly accelerate the note because they failed to give borrowers a notice of default accelerating all principal sums outstanding and demanding payment in full.

Rather, we agree with the trial court that no formal notice of acceleration was required under the terms of the note, and commencement of a foreclosure action was sufficient to accelerate the obligation secured by the deed of trust. *See Hendron v. Bolander*, 101 Colo. 414, 418–19, 74 P.2d 706, 708 (1937)(in the absence of a provision in a promissory note requiring notice of acceleration be given to the debtor, the commencement of foreclosure proceedings is sufficient).

Plaintiffs reason from *In re Church*, 833 P.2d 813 (Colo.App.1992), that in the absence of the exercise of an option accelerating the terms of the note, there could be foreclosure only as to the delinquent payments. However, the division in *Church* addressed only whether the statute of limitations had run on each installment from the day it became due if the option to accelerate was not exercised. Further, it held that a foreclosure action was

not precluded and did not hold that only delinquent payments could be foreclosed upon.

### C.

Nevertheless, we agree with plaintiffs that upon acceleration of the note, defendants had no right to collect future interest or to include the amounts of such interest in their foreclosure bid as "amounts due." Plaintiffs rely on cases from other jurisdictions generally holding that where a note is accelerated at the option of the holder, a prepayment penalty is not permitted. *See Tan v. California Fed. Sav. & Loan Ass'n,* 140 Cal.App.3d 800, 189 Cal.Rptr. 775 (1983); *Slevin Container Corp. v. Provident Fed. Sav. & Loan Ass'n,* 98 Ill.App.3d 646, 54 Ill.Dec. 189, 424 N.E.2d 939 (1981); *McCarthy v. Louisiana Timeshare Venture,* 426 So.2d 1342 (La.Ct.App.1982); *Kilpatrick v. Germania Life Ins. Co.,* 183 N.Y. 163, 75 N.E. 1124 (1905); *American Fed. Sav. & Loan Ass'n v. Mid–America Serv. Corp.,* 329 N.W.2d 124 (S.D.1983).

The interest defendants claimed here was not described in the note or deed of trust as a prepayment penalty. While the promissory note provides that "[b]orrower reserves the right to prepay" the note at any time "without penalty or fee," this provision is preceded by the words, "[w]ith the exception of said prepayment restrictions." This exception refers to the preceding sentence, which states that defendants were not obligated to accept any prepayment at any time prior to October 15, 2004. The effect of this prepayment restriction is that defendants could elect either to allow borrowers' prepayment without penalty or to refuse prepayment and continue to demand monthly payments of principal and interest to October 15, 2004. *See Carpenter v. Winn,* 39 Colo.App. 238, 566 P.2d 370 (1977).

Under *Carpenter,* a note holder may refuse an early tender of the principal balance remaining due, but when the note holder waives the right to refuse early payment, any prepayment penalty or premium must be specifically provided in the contract. *See Burks v. Verschuur,* 35 Colo.App. 121, 532 P.2d 757 (1974)(if a mortgagee is to seek a premium or penalty upon prepayment, the mortgagee must specifically provide for it in the mortgage instrument).

When borrowers here defaulted, defendants accelerated the note obligation and exercised their right to foreclose. They also sought to include in their foreclosure bid as a "prepayment penalty" an amount representing future interest to October 15, 2004. To determine defendants' right to include such payments, we must first determine whether they constitute a prepayment penalty. We conclude that they do.

Generally, a prepayment penalty is a charge assessed against a borrower who elects to pay off a loan before it is due. *Black's Law Dictionary* 1201 (7th ed.1999); *see Aronoff v. Western Fed. Sav. & Loan Ass'n,* 28 Colo.App. 151, 470 P.2d 889 (1970).

Prepayment penalties serve a valid purpose in compensating at least in part for the anticipated interest a lender will not receive if a loan is paid off prematurely. Among other things, a prepayment penalty insures the lender against loss of its bargain if interest rates decline. *In re LHD Realty Corp.,* 726 F.2d 327 (7th Cir.1984).

Prepayment penalties usually consist of the payment of additional interest or a flat predesignated amount. *See Aronoff v. Western Fed. Sav. & Loan Ass'n, supra* (180 days' interest on the amount prepaid over 20% of the original principal amount of the loan); *Burks v. Verschuur, supra* (additional $5,000); *Tan v. California Fed. Sav. & Loan Ass'n, supra* (6 months' interest on the amount prepaid exceeding 20% of the original principal amount of the note); *Slevin Container Corp. v. Provident Fed. Sav. & Loan Ass'n, supra* (not more than 6 months' advance interest on that part of the aggregate amount of all prepayments on the note in one year which exceed 20% of the original principal amount of the loan); *Kilpatrick v. Germania Life Ins. Co., supra* ($1,000 in addition to the principal sum and interest).

While not denominated as a prepayment penalty in the note and deed of trust, the future interest payments at issue here, which were included in the foreclosure bid as amounts allegedly owed to defendants, essen-

tially constituted a prepayment penalty. Defendants conceded as much by designating the claimed amount in the foreclosure bid as a "prepayment penalty." We also note that the trial court referred to the interest payments as a "prepayment penalty." More importantly, the amount included in the bid was for future interest payments on the unpaid principal balance. *See Aronoff v. Western Fed. Sav. & Loan Ass'n, supra; see also Ferreira v. Yared,* 32 Mass.App.Ct. 328, 588 N.E.2d 1370 (1992)(disallowing penalty interest representing the balance of interest to the three-year mark).

### D.

Here, the trial court observed that the purpose of the prepayment restriction was not to encourage prompt payment, but to encourage payments at least through October 2004, and reasoned that defendants should not be prevented from realizing the benefit of their contract. In its analysis, the trial court relied on *Carpenter v. Winn, supra.*

However, we do not read *Carpenter* so broadly. After making a certain number of payments under an installment land contract, the plaintiffs in *Carpenter* tendered to the seller the total remaining unpaid principal and demanded a warranty deed. The seller refused and demanded that the plaintiffs pay the total principal plus interest that would have been paid over the term of the contract. The division in *Carpenter* held that, because the express terms of the contract called for fixed periodic payments, the seller was entitled to demand the consideration she did as an inducement to waive her rights under the contract to receive payments on a fixed periodic schedule.

Here, there is a right to prepay, but it is subject to the exception that defendants were not obligated to accept any prepayment prior to October 15, 2004. Absent an acceleration, if borrowers had attempted to tender payments of principal before that date, defendants, like the seller in *Carpenter,* could have refused the tender under the terms of the note. But such a tender did not occur here, and *Carpenter* did not address the effect of acceleration on the lender's right to collect a prepayment penalty.

While courts in Colorado have not ruled on this issue, we are persuaded by those cases from other jurisdictions, cited above, holding that a prepayment penalty is not permitted where a note is accelerated at the option of the holder. The rationale of these cases is that no liability for a prepayment penalty arises from a default; rather, it arises only upon a prepayment as specified in a prepayment penalty provision. Once the note holder accelerated the due date of the loan and demanded full payment, the entire unpaid balance became due under the terms of the note itself, and there was no "prepayment" to which a prepayment penalty would attach. Alternatively, the choice to accelerate constituted a waiver of the right to a prepayment penalty. *See In re LHD Realty Corp., supra; Tan v. California Fed. Sav. & Loan Ass'n, supra; McCarthy v. Louisiana Timeshare Venture, supra; American Fed. Sav. & Loan Ass'n v. Mid–America Serv. Corp., supra; see generally* Vicki A. Huffman, Annotation, *Construction and Effect as to Interest Due of Real Estate Mortgage Clause Authorizing Mortgagor to Prepay Principal Debt,* 86 A.L.R.3d 599 (1978).

Although some of the cited cases concern the exercise of a "due on sale" clause, *see Slevin Container Corp. v. Provident Fed. Sav. & Loan Ass'n, supra; American Fed. Sav. & Loan Ass'n v. Mid–America Serv. Corp., supra,* the same principle prohibiting recovery of a prepayment penalty upon acceleration of a note has been applied in foreclosure cases. *See In re Pinebrook, Ltd.,* 85 B.R. 160 (Bankr.M.D.Fla.1988); *3C Associates v. IC & LP Realty Co.,* 524 N.Y.S.2d 701, 137 A.D.2d 439 (1988); *Rodgers v. Rainier Nat'l Bank,* 111 Wash.2d 232, 757 P.2d 976 (1988).

In two cases with similar factual circumstances, the courts have declined to allow a party to recover future interest payments upon acceleration of a note. In *Rodgers v. Rainier National Bank, supra,* debtors on a promissory note defaulted, and the lender accelerated the maturity date. As a requirement for the debtors to avoid foreclosure sale, the lender demanded unaccrued interest

for a period for which the note had prohibited prepayment of principal. The note provided that it could not be prepaid in whole or in part during the first four loan years. Thereafter, the loan could be prepaid in full and only by paying a prepayment fee. Upon default, the lender sent the debtors notice of nonjudicial foreclosure and sale. Before sale, the debtors tendered the unpaid principal plus accrued interest and costs. The trustee rejected the tender and demanded the unaccrued interest through the first four years, as well as the prepayment fee. The debtors paid the full amount demanded and then brought suit. The trial court granted a partial summary judgment in the debtors' favor.

In affirming, the court in *Rodgers* commented that the note prohibited prepayment during the first four loan years, but did not specifically provide for payment of the interest for the entire four years if there were a default and acceleration during that period. It further commented that the note provided an option for the lender, in the event of default, to declare due and payable the entire principal sum and accrued interest. The lender unilaterally chose to exercise that option and, in so doing, negated the prohibition against prepayment of principal and obliterated the fifth loan year prepayment fee.

Similarly, in *Ferreira v. Yared, supra*, the borrowers defaulted, and the lenders initiated foreclosure proceedings. To avoid foreclosure, the borrowers paid off the mortgage note in full. However, included in the amount required by the lenders for redemption was a sum in penalty interest, representing the balance of interest to the three-year mark. That sum, along with other fees and costs, was paid under protest. The court held that by accelerating the note, the lenders lost the right to collect a prepayment penalty. According to the court, a prepayment premium does not attach when a loan is accelerated because the act of acceleration advances the maturity of the debt, and the debt becomes immediately due and payable. Thus, unless the note otherwise provides, the holder of a note cannot simultaneously accelerate the note and collect a prepayment penalty. The lenders, by accelerating the prom-

issory note, were entitled to no prepayment penalty interest.

Here, our task is to construe the bargain as set forth in the note and deed of trust. These documents do not provide for the collection of future interest in the event of foreclosure. *See Rodgers v. Rainier Nat'l Bank, supra*. While courts in other jurisdictions have enforced notes that provide for the right to prepayment premiums, even in the event of acceleration following default, *see United States v. Harris*, 246 F.3d 566 (6th Cir.2001), no such provision was included here, and we express no opinion on the enforceability of such a provision.

Finally, there is no evidence in the record that borrowers intentionally defaulted in order to avoid paying additional interest. *See Florida Nat'l Bank v. Bankatlantic*, 589 So.2d 255 (Fla.1991)(recognizing an exception to the rule limiting a lender's right to receive a prepayment penalty in the event of intentional default to avoid prepayment penalty). *See also In re LHD Realty Corp., supra*, 726 F.2d at 331 ("Should such intentional defaults become a problem ... we believe courts could deal with the difficulty by denying the acceleration exception in appropriate cases.").

Having chosen to accelerate, defendants lost their right to the claimed future interest payments. In view of our conclusion, we need not address plaintiffs' remaining contentions.

The orders are reversed, and the case is remanded for further proceedings on plaintiffs' motions consistent with the views expressed in this opinion.

Judge TAUBMAN and Judge VOGT concur.